[No. 36515. Department One. February 21, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. TOMMY LEE BOYER, *Defendant*, JOHN C. STANLEY, *Appellant*.*

*William C. Harrison*, for appellant.

*John J. Lally* and *John M. Klobucher*, for respondent.

HILL, J.—This is an appeal from a conviction of armed robbery. The assignments of error center around whether certain confessions and admissions were properly admitted in evidence.

*Reported in 378 P. (2d) 936.

The defendant, John C. Stanley, and a companion were arrested at 10:15 p.m., by the state patrol some 10 or 15 minutes after the armed robbery of a service station. They were turned over to two deputy sheriffs and taken directly to the sheriff's office where they were questioned separately. The defendant at first refused to give any information. After being informed that his companion had confessed and, following a suggestion by a deputy sheriff that inasmuch as he had been caught in the act he ought to throw himself on the mercy of the court, the defendant admitted his participation in the crime. This questioning of the defendant did not exceed 45 minutes. At 11:23 p.m. a stenographer commenced to take, in shorthand, a series of questions and answers which constituted a complete confession. The stenographer then transcribed her notes, and the defendant scanned through the transcribed statement and signed it.

The defendant was held in the jail overnight. The next morning, a deputy sheriff secured a warrant for the defendant's arrest and served it upon him and, at about 11:30 a.m., he was taken before a justice of the peace who informed him that he had a right to counsel; that if he did not have funds to employ counsel, one would be appointed for him by the superior court; that he had a right to trial by jury; that he did not have to say anything to anyone, but that anything he did say could be used against him. He was told that his bond was fixed at $3,000 and was given an opportunity to ask questions.

Immediately after his appearance before the justice of the peace, he was taken to the office of a deputy prosecuting attorney where he was furnished coffee and cigarettes. There, in a somewhat informal and friendly atmosphere, he talked freely. In the presence of a deputy prosecutor, a deputy sheriff and a stenographer—and in response to a series of questions by the deputy prosecutor, the defendant again made a complete confession. The questions and answers were taken down by the stenographer in shorthand; she transcribed the question-and-answer statement, but it

was not signed. It will be referred to as the "second confession."

The trial court held a hearing, in regard to the admissibility of both confessions, as required by RPPP 101-.20W.

With reference to the first confession, there was no contention of physical coercion or protracted questioning. The trial court found that the statements made were the product of the defendant's own free will. It is conceded that the defendant was not advised that what he said might be used against him; that he was not advised of his right to counsel; and that he was not advised that, if he had no means to employ counsel, the superior court would appoint counsel to represent him. The trial court found, on conflicting testimony, that one of the deputy sheriffs did advise the defendant that he did not have to make statements to the officers.

The defendant testified that he had made a request to use the phone to call his grandmother; this was denied by the officers, and the stenographer testified that he had said he did not wish to involve his family or let them know he was in trouble.

The issues raised, with reference to the first confession, are identical with those we considered in *State v. Moore* (1963), *ante* p. 165, 377 P. (2d) 456 and determined adversely to the defendant. In that case we quoted *State v. Brownlow* (1916), 89 Wash. 582, 154 Pac. 1099, where we said:

" . . . The confession was properly admitted. It was not necessary to remind her that she was under arrest, that she was not obliged to reply, and that her answers would be used against her. There was no inducement, fear, or threat. The statement was voluntary. . . . "

And we pointed out, further, that a suspect's constitutional rights are not violated by a failure to advise him of his rights or privileges when interrogated by the police or other investigating authorities. *State v. Dildine* (1952), 41 Wn. (2d) 614, 250 P. (2d) 951.

The trial court properly concluded that the first confession was not coerced, but voluntary, and that no constitutional rights of the defendant had been violated in obtaining it. There was no error in submitting it to the jury.

With reference to the second confession, there was likewise no question of physical coercion or prolonged questioning. The situation had changed to the extent that the defendant was no longer merely a suspect, for while no indictment or information had been filed, a complaint charging him with robbery had been filed and a warrant issued. The deputy sheriff had served the warrant and the defendant had appeared before a justice of the peace who fixed bail. The defendant had been advised of his constitutional rights as a person charged with a crime.

The defendant's attack on the second confession is in four phases:

1. He was not advised by the deputy prosecutor that he did not have to make any statements and that anything he said might be used against him.

We have consistently held that an otherwise voluntary confession is not rendered inadmissible by the failure to give such a warning. *State v. Moore, supra*; *State v. Brownlow, supra*; *State v. Dildine, supra*. The failure of the deputy prosecutor to so advise the defendant is merely a factor to consider in determining whether the confession was voluntary. Even jurisdictions which, by statute, require as a condition precedent to the admissibility of a confession that such a statement be made, do not hold that the warning and the confession must be contemporaneous, but only that the confession must have been made so near in point of time to the warning, or under such circumstances, as to indicate that the accused must have had the warning in mind at the time when he made the confession. *Nicks v. State* (1904), 46 Tex. Crim. 241, 79 S. W. 35; *Petty v. State* (1901), 65 S. W. 917, 23 C. J. S., Criminal Law § 823 (1961).

In this case the defendant's second confession, in the deputy prosecutor's office, followed immediately upon his

appearance before the justice of the peace, who had advised him of his right to remain silent and that anything he said would be admissible in evidence against him. Even under the Texas rule the confession would be admissible because it was made so near in point of time to the warning that he must have had it in mind at the time he confessed. There is no merit in this phase of the attack upon the admissibility of the second confession.

2. He did not have the benefit of counsel; and the deputy prosecutor did not advise him of that right.

 The right of an accused to appear and defend by counsel is expressly guaranteed by our state constitution, Art. 1, § 22, as amended by the tenth amendment; and a statutory duty (RCW 10.40.030) is imposed upon the court, if the defendant appears without counsel, to advise him of his right to counsel and to appoint counsel for him at public expense under certain circumstances.

In this case, the defendant had been advised of his right to counsel by the justice of the peace, and immediately thereafter, with no request for counsel or suggestion that he desired counsel, the second confession was made.

We pointed out in *State v. Moore, supra,* that there is authority for the proposition that the admission in evidence of a confession obtained in the absence of counsel, after indictment, is a denial of due process (see *People v. Waterman* (1961), 9 N. Y. (2d) 561, 175, N. E. (2d) 445); also that the admission of a confession secured after a request for counsel, either before or after a charge has been filed, is a violation of the right to counsel (see concurring opinion of Mr. Justice Douglas in *Culombe v. Connecticut* (1961), 367 U. S. 568, 637, 6 L. Ed. (2d) 1037, 1077, 81 S. Ct. 1860, 1897.

Neither of those situations is before the court at this time. There was no indictment (or information under our procedure) filed, as in the *Waterman* case. The defendant was being held on a robbery charge, but no indictment or information had been filed, and there had been no request for counsel.

3. He had understood that the admonition that he did not have to talk to anybody only applied in the courtroom, where it was given, and he thought he had to answer the questions of the deputy prosecutor.

The trial judge made the following comment, with reference to this contention:

" . . . I consider the argument of counsel regarding what the defendant may not have understood, but it seems to me that after hearing Judge McInturff state the advice and information that was given to the defendant by reason of his practice in giving to all defendants, that there could not have been any misunderstanding by a person of ordinary intelligence, and certainly, the defendant is such a person. He has gone to the second year in high school; he has been in the service. True, it is shown he did not adjust to army life, and was given a general discharge, but people who are given those kind of discharges are certainly able to comprehend what is told to them. I don't see how it could be any plainer, . . . "

■ The defendant's claim that he did not understand the statements made to him by the justice of the peace, raised an issue of fact, which, on the hearing as to the admissibility of the confessions, was determined adversely to him by the trial court. The jury could not pass upon it because the defendant did not take the stand. There is nothing to give credibility to the statement by this 23-year-old defendant, who had completed the 10th grade in our public school system, that he did not understand what was told him.

4. He objected to the manner in which the second confession was presented to the jury.

The second confession, being unsigned, the state—in presenting its case—elected not to offer the confession in evidence, but to call the stenographer, who had taken it in shorthand and transcribed it, as a witness to prove what was asked by the deputy prosecutor and what answers were given by the defendant.[1]

---

[1]For an interesting discussion of variations of this procedure see *State v. Coy* (1934), 140 Kan. 284, 36 P. (2d) 971.

The only objection made to this modus operandi was that the questions were asked by the deputy prosecutor at a time when he

". . . hadn't advised the defendant of his Constitutional rights, and that he was entitled to have an attorney represent him at that time; that if he had no money the court would appoint an attorney to represent him at that time, and further, actually the defendant was in custody and in fear as he was testifying."

There is absolutely no showing of fear or intimidation and the other points urged in the objection are the same objections to the admission of the confession which we have heretofore discussed and found to be without merit.

The trial court properly held that both confessions were voluntary and free from coercion or duress and that nothing in the circumstances under which they were made, rendered them inadmissible.

Judgment affirmed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.